Everybody's on screen, on my screen, right on time. Very good. Ms. Depper? Yes, Your Honor. The court notes that you're CJA appointed and we appreciate your help. Yes, Your Honor. Absolutely. And good afternoon to you all. My name is Annie Depper and I'm here arguing on behalf of the appellant Kra Brooks. The issue before this court is whether the trial court aired and failing to suppress Mr Brooks's post Miranda statement and failing to excise certain information contained in the affidavit for search warrant and in determining that the affidavit for search warrant was supported by probable cause. I'll start my argument by addressing Mr Brooks's post Miranda statement. And as I stated, the court determined that it was not that it was sufficiently attenuated. Can I just ask one question preliminary to that? Absolutely. The government notes in its brief it think it thinks the pre statements were wrongly suppressed. Is that an issue in your view that requires a cross appeal? Or is that an is that an alternative could be an alternative grounds to affirm? Your Honor, I think that it would require a cross appeal to find that. Did you did you research that? Because it can be a tricky issue. It can be a tricky issue. I did not research it simply because. Okay, just I thought that'd be your position. I just wanted to get it out there. Yes, Your Honor. And so going to Mr Brooks's post Miranda statement, as this court is aware, there are multiple factors that the court considers when determining if it was sufficiently attenuated. 1 is the temporal proximity to are in the intervening circumstances and 3 is the purpose and flagrancy of the official misconduct. I'll start with temporal proximity and the temporal proximity, I think, is important because Mr Brooks's unlawful detention did not end until approximately 20 minutes before his post Miranda statement. I think the government would like the court to look at the larger period of time for when Mr Brooks was initially detained until his post Miranda statement. There's about an hour to an hour and 15, maybe 20 minutes. But really, I think the timing is from when his unlawful detention ended at the time. He was formally put under arrest and when he gave that post Miranda statement and that time period is about 15 to 20 minutes. If we look at intervening circumstances, there are not very many in this case, the intervening circumstances. I think that we have and I'll agree with the government is that Mr Brooks was taken to another location. Did you just say that the arrest was unlawful? Was there any ruling on that? I think what the court found is that the detention, the detention that lasted about an hour that ultimately, I think the court decided this had to be a Terry stop because there was not consent. I think that that that period of time of that detention was unlawful. And I think the court's finding was that because that detention was unlawful, the things that happened during it were unlawful as well because it was very slow. Was that in the magistrate judge's opinion that analysis? I mean, the dog sniff issue is gone to the Supreme Court more than once. Absolutely, and I understand that your honor and I do not think the district court made a specific ruling. Was there was that was that was that argument made by but I don't know if you did the suppression. The overarching argument was just that the detention in total was unlawful and therefore the actions that the police took during that unlawful detention were also unlawful. Not specifically. Let's look at the dog sniff. Not specifically. Let's look at the search of his luggage. But because he was unlawfully detained, if that's right, then there wasn't any break in the illegality. Was there? That would be that would be correct. Your honor. And I don't think all of all the way to all the way to the interview room at the station house. That is correct. The illegality never ended. So why do we even have this issue? And I think the illegality ended now agree with the government on this. I think the illegality ended by the time that he was formally placed under arrest, which is about 15 to 20 minutes prior. That was that was a that was a fruit of what you're now saying was a poison dog sniff. That's absolutely true. Your honor. And I will say this too. I will say this too. He was ultimately placed under formal arrest because of items that were uncovered through the search of his luggage. And as I would say, although the court did not find this, the search of Mr. Brooks's person. So, ultimately, I thought I thought that I thought the luggage was searched because the dog sniffed one out of five suitcases that it was walked around. No, your honor, the dog sniff occurred, I think, after they had searched his luggage, the dog sniff did not lead to the search of his luggage. He ultimately went through TSA, TSA, identified an anomaly in the bag that anomaly was found to be money. That was vacuum sealed later when he's taken down to the office located in the lower level of the airport. That's when they start searching his luggage further, and they find the promethazine coating bottles, which was part of the reason that he was ultimately placed under arrest. And then they, as I would say, search enough to get the warrant. Why does the post Miranda information even even raise a problem and your honor gets to an important issue? And I think this goes to the second argument of what should have been excised from this warrant for the search of his home. And the question is, where did the information contained in that affidavit come from? It would be one issue. It would be one one issue. If what happened was TSA identifies this currency. Mr. Brooks is never detained, but TSA alerts authorities and therefore, as everyone is aware, when you go through TSA, they, they have the right to search. Your luggage administrative search keeps everyone safe. So it'd be one thing if TSA was the entity that was notifying others of what happened. But instead, what we have is TSA find the anomaly. Fine. We're okay with that. Looks at the bags. Fine. We're okay with that. Found the money. The issue is that after that, Mr. Brooks is unlawfully detained and where did the information that is in this affidavit come from? Did it come from L. R. P. D. because through there, you know, talking to him when he was illegal detained, they got more information. Did it come from later? And his post Miranda interview when he gave more information as we have stated in our briefs, it's unclear what he stated in that. What were the findings on that? Wasn't, wasn't there an evidentiary hearing and your honor? I'm not sure that I understand your question. What were the findings as to where the information came from? Your honor? It's unclear. And that's the problem. I think it was the government. Well, it's not a problem. If nobody requested a finding, well, your honor, and we had, we had put forth in our briefing for the district court that in order for this information to come in, the government had to go through one of three avenues to say, well, isn't it clear that paragraph 21 is entitled to be used as evidence to prove that the information contained in the affidavit was not derivative of the unlawful conduct of law enforcement we put that in our briefing in front of the district court and the government failed to put on any evidence to demonstrate that the information that was contained in there came from a source that was sufficiently attenuated or that there was any other distancing from the unlawful conduct for this information to come in. Well, isn't it clear that paragraph 21 is entirely from the TSA activity? It talks about how TSA found these suspicious heat sealed, vacuum sealed bags of currency marked as legal documents and that the packaging is consistent with no narcotics concealment methods. I said, isn't that clearly usable? Your honor, I don't think it's clear that that came from TSA. All we have from that paragraph is that the national bulk cash smuggling center notified HSI little rock office. And the question that I have your honor is we don't know. We don't know if what happens is TSA identifies a large bulk amount of currency and then notifies national currency. Center and they send out an alert. We don't know that. And if that indeed happened, I will I will. I thought it was clear the district court found paragraph 21 was did not need to be excised it did your honor and we're saying that the court erred in that decision. So that now we're talking clear air review. Yes, your honor, and I think the issue is that the court did not have enough information in front of it to make that determination. We just don't know specifically where that information came from. And I think when you're dealing with issues like this, we don't need to get or assume or infer. We need to know exactly where that information came from. And we don't know in this case, your honors and furthermore, I would say that's right in the paragraph that TSA officials have been. Observe the evidence and TSA officials found certain things, so I don't understand why you think it's unclear where the information came from. Well, I think it's unclear because we don't know if that paragraph is saying TSA located this information. Ultimately, TSA notifies, which is true and then based on the information they obtained from Mr Brooks during the unlawful detention. Then it gave that information to the National Bulk Cash Smuggling Center. We just don't know the chain of events, and I think it requires us without additional information to guess or infer that that information came directly from TSA to the National Bulk Cash Smuggling Center. Why does it matter how the Bulk Cash Smuggling Center found out about it? How does that bear on whether there was probable cause to search? That's just a matter of who's talking to whom. The important information is what was found in the luggage, isn't it? It is your honor, but I think it comes down to this issue of whether that information was sufficiently set apart from the unlawful conduct of law enforcement to remain in the affidavit. And so I think if that information came from LRPD based on the unlawful detention, then there's a problem with that information staying in there. And I think there are multiple avenues for the government to put on evidence to show that no, that that information was absolutely allowed to stay, even if that information came from LRPD, there are avenues for the government. But the problem is, your honors, that the government did not put on evidence of how that information arrived to be in that affidavit. And your honors, I'm happy to take more questions. I see that I'm into my rebuttal time here, where did where did we get the the information that's in the it's in your brief about the is all started with an alert from the National Bulk Cash Smuggling Center to TIA. I heard that word that evidence come from. It didn't come from TIA. We don't know, your honor, we don't know where that information came from and it came from the National Smuggling Center. But the question is, who gave that information to the National Bulk Cash Smuggling Center? No, that's not relevant. That's not relevant in the slightest. I think that was long before this detention. I think it is relevant, your honors, because we just tell me, tell me how that relates to the to the to the the question, the post Miranda statement issue. Your honors, it does not relate to the post Miranda statement. What does it relate to the warrant affidavit? Yes, your honor. It relates to the warrant affidavit and whether the district court sufficiently adequately excise the warrant affidavit. Where is where is any basis to infer that the Smuggling Center sent out its alert as a as a result of information subsequently obtained and provided by the LRPD? That's absurd. That's just absurd, your honor. I don't think it's absurd. I think we don't have enough information to make that determination. We know the alert. Wait, we know the alert came before Christensen took his action at the airport, right? He took it on the basis of that alert. We do not, your honor, that alert. We have no information in the record, no testimony of where that alert came from. All right. This is so. All right. I understand your position. Thank you, your honor. I'll reserve my additional time if that's right. Thank you, your honor, and I'm going to turn it back over to the district court to make a motion to suppress the warrant affidavit. Miss Bryant. Thank you, your honor. May it please the court. My name is Kristen Bryant, and I represent the United States in this matter, and as we've just as we've discussed in our brief, the district court correctly ruled in denying in part, Mr. Brooks's motion to suppress first, the district court held that from the initial illegal detention, what's your what's your position on the warrant affidavit? On the on the the need for a cross appeal, your honor, as I was thinking about that, as you asked that question to Miss Depper, I think if the issue is what happened, the factual issue is what happened, then we're left with Judge Miller's ruling unless we cross appeal it. If it's a legal conclusion, I believe that this court can affirm it without a cross appeal. But I don't I don't have a case at this time to cite to you. Well, the Supreme Court just had a decision on that that I did not review for this purpose. So I assumed counsel would have studied that. Apparently not. Well, we'll look it up. Thank you, your honor. Yes, your honor. And if I misspoke, I'm discussing paragraph 21, the information obtained from the TSA. And if the court looks at the record from the suppression hearing, Officer McIntyre testified in paragraph 48 that excuse me, on page 48, that when they arrived, they were told by the TSA they had bulk cash. Was vacuum packed in the bags. This is before any contact was made with Officer McIntyre to Mr. Brooks. So if that's correct, is it your position, then the government's position that paragraph 21 by itself is enough to establish probable cause for the warrant? Or do you also need 25? I think that paragraph 21 in and of itself, combined with the other paragraphs, is enough to establish probable cause. What do you mean combined with the other paragraphs? This is all about how you can't use some of the other paragraphs. So you got to be more precise than that. I apologize. The paragraphs that the district court kept in and coupling it with paragraph 25. And I was just asking you whether you need 25 or not. And you said, well, combined with the other paragraphs, it's enough. And now you're saying you're relying on the ones he kept in. I apologize. Help us by focusing on whether you need more than 21. We do not need more than 21. When looking at paragraph 21, the fact that Mr. Brooks attempted to board a flight from Little Rock to San Francisco. Carrying the large suitcase that had had a significant amount of money heat package and sealed consistent with no narcotics trafficking methods. That is sufficient to find probable cause. So you don't think you need 25, which is the information about the Southwest luggage? No, Your Honor. Because I know the defense argues, well, you wouldn't have come upon 25. But for the post, I mean, the LRPD activity, which is what triggered this follow up. And Your Honor, I disagree with that argument that they make, because, first of all, it's clear from the affidavit that LRPD had been investigating. Or excuse me, the Drug Enforcement Administration had began investigating Mr. Brooks since 2016. And so the fact that TSA observed him going through the airport with a significant amount of cash is enough to warrant that DEA looking further into other conduct by Mr. Brooks at the airport. So, again, absent any of this illegal detention, that DEA would have likely come upon that information just by the simple fact that Mr. Brooks was going through the airport with a large amount of money. How do we know DEA would have been involved, but for the detention? Because the DEA was investigating Mr. Smart, and through the investigation of Mr. Smart and Mr. Smart's banking activities and the warrants that they executed at a house related to Mr. Smart, they knew that Mr. Brooks was involved in these drug trafficking activities. But are you saying the record shows that even if Brooks had not been detained, that TSA would have forwarded the information and it somehow would have come to DEA and DEA would have checked into this history of Brooks and put together a warrant? Can we assume all that would have happened, even if they just let him go on the plane? I believe so, Your Honor, because, again, so that if the national bulk cash smuggling gives the information to Homeland Security, and so when the agencies are looking at individuals that they're investigating, they're cross-referencing each other to make sure that their investigations aren't overlapping. So I think they would have realized that Mr. Brooks was caught going through the airport with a significant amount of money and then looked back at other investigations that may have related to Mr. Brooks through the Little Rock Police Department. Did some witness testify to this ordinary course so that we can see the basis for what you just said? No, Your Honor, I don't believe they did. But in looking at Agent Hensley, again, at his affidavit, and I'm looking at it really quickly, he does talk about in his training and experience activities of drug trafficking individuals who will conceal large amounts of money and the ways in which they do that. What paragraphs, counsel, are you referring to? I'm looking at paragraph six, Your Honor. Six. That's all good as far as how drug traffickers operate, but I was asking more about the chain of events because you're saying inevitably certain things would have happened even if Brooks had been let go to board his flight. And I'm wondering if you have anybody who testified to that effect.  I don't think we have anyone who testified to that effect. Thank you, Your Honor. The last thing I'm going to ask you about is the length of time that he was actually held in until he gave the statement which I think Miss Depp are saying was 15 to 20 minutes. We have to look at the time when he initially came in contact contact with officer McIntyre, which was 8 a.m. He was taken to the Little Rock Police Department at 9 a.m. And then he was subsequently given his Miranda warnings at 10 a.m. So in looking at the temporal proximity, I believe there's a period of at least two hours. That passed. Judge, I'm sorry, I can't hear you. I know I missed the missed the button again. I don't understand why that the district court assumed the arrest was lawful. Yeah, I don't know if the district given given the given the illegal detention. Yeah, I don't believe that the argument was made that the arrest was illegal. And so I don't think the district court address the legality of the arrest either way. But the district court certainly didn't find that the arrest was illegal. Sure, sure. Looks like poison fruit. As as the as the as I read the free Miranda court analysis of the free Miranda statements issue. And he said he says it was unnecessarily prolonged a Terry stop. If you look at it, it's a Terry stop. That usually means if it ends in an arrest, it's an unlawful arrest. And again, I think that goes back to our argument that the the statement, even the post Miranda statements, the defendant wasn't prejudiced by any of that because none of those statements were used in anything to obtain the subsequent search warrant of Mr. From this record, can we tell what was even said at the post Miranda interview? Is that in the record? No, Your Honor, I don't believe that it is. And how can we assess the case? Tell me what we do in that circumstance, because most of these cases I've been involved in. It's very clear what the person said at the post Miranda interview. And again, Your Honor, I think that falls back to that. The defendant's not prejudiced by anything that was said in the post Miranda interview. And I understand that the record is not developed as to what was said during that post Miranda interview. But nothing in the post Miranda interview was used in obtaining the search warrant to search Mr. Brooks's home. Well, is the only issue on appeal whether the search warrant evidence can come in or is he also appealing whether the post Miranda statements, whatever they were, can come in? And then what do we do with a conditional guilty plea situation? Well, Your Honor, he can come in and some of it can't go ahead. He pled to the 924 C, which was the result of what was found during the search of his home. And so any fruits of his post Miranda statement weren't used to obtain that search warrant. So, well, I think that's an issue that was raised on appeal. I don't know if that if if the court saying the post Miranda statement is out affects the ultimate seizure of what happened at his house. But does it affect the plea? I guess is the question. I don't believe it does, because as long as this court finds that the search warrant was valid and was based upon probable cause, then the conviction still stands because the convictions based on the firearm and the drugs that were found at his home. So even if this court tossed the post Miranda statement, I still think the government prevails. Who has the burden to show what's in the post Miranda statement? Usually the government's one that tells us, by the way. But who do you think has the legal burden? I believe that was probably us that we had the legal burden to say what was in the post Miranda statement. Well, who has to show the nexus now that Mr. Brooks has to show the nexus in the book for cause between the alleged constitutional violation and then the evidence that's obtained. And so, again, the illegal detention and then the nexus to the subsequent issuance of the search warrant, which we're saying there is no nexus because nothing in the search warrant relied on anything from the illegal detention. Yeah, I mean, I don't know if anybody really has a burden at a suppression hearing to show what was in the post Miranda statement, because you're just deciding whether that could be used at the trial. If there were a trial. I don't know. Maybe I'm not following this. And if there are any other questions, I'm happy to answer them. I don't want to get off on an issue that the court's not interested in discussing. I believe I've addressed how I would like to address your questions. Well, I'll try once more on this conditional guilty plea problem. If the district court says, I'm going to let in post Miranda statements, and I'm going to let in search evidence. And the defendant says, okay, judge, if you're going to let all that in, I'm going to plead guilty, but I'm going to do it conditionally and appeal your ruling. And if the court of appeal says, well, the judge was right to let some of it in, but not right to let the rest of some other part in, how do we know that the defendant would have made the same decision on pleading? Wouldn't we have to remand and say, well, we don't agree with him. He wins in part on his appeal. And so it has to go back for consideration whether he would plead on a different suppression ruling. I don't think I don't believe that. I think, again, if this court finds that the probable cause in the search warrant that the district court properly excise the. I think I believe the two paragraphs that they took out and that the search warrant was based on probable cause, and it was sufficiently attenuated from any illegal detention, then that the police stands. Thank you. And your honors, if there are no other questions, I would surrender the balance of my time. On this relevance of the arrest, I asked the question based on our Jorgensen decision. Where we said that his brief failed to cite any case where the exclusionary rule has been applied to statements made following an arrest based upon probable cause obtained and executing a facially valid search warrant, subsequently invalidated by a Frank's hearing. Well. If the arrest if the arrest was was based upon probable cause illegally obtained. It seems to me Jorgensen doesn't apply. Could you repeat your question? I'm sorry. Well. We were discussing New York versus Harris and Peyton versus New York and trying to piece the two together. And the Harris, of course, declined to apply the attenuation analysis when there was no probable cause to search for arrest. And the court suggests an arrest in a home without a warrant, but with probable cause. Harris reads Brown as saying an arrest in a home without a warrant, but with probable cause does not require exclusion of statements subsequently obtained outside the home. So, you know, translating that here. If if the. If the arrest was so here we have an arrest, which everyone is assuming was lawful, but I don't I don't understand the assumption. The district court didn't discuss that. So we have an arrest that's that's unlawful because it's a it's at the end of an unlawful detention. It's the product of an unlawful detention. And then we have him taken to. But he's not now. So he now is not. Harris is discussing the outside, inside versus outside the home. And when he's outside the home, of course, then it's no longer a warrantless and warrant requiring environment. This case, on the other hand, he is taken to a to a place other than the place of detention because he's been arrested. And if the arrest was unlawful. And it seems to me, Jorgensen doesn't doesn't help the government. I still think even if if the arrest was unlawful, the subsequent statements, postmortem statements made were still sufficiently attenuated from that to. They were directly the fruit. There wouldn't have been the station house interview if he hadn't been arrested. It was not the kind of consent that I think was there was in Brown. Again, I think our argument would be that even if it was an illegal arrest, it was still sufficiently attenuated, considering all of the factors that intervening circumstances, the temporal proximity and the fact that there was no flagrant misconduct. Thank you. Thank you. Let's see. Yes. Rebuttal time. Thank you, your honor. And I'll just jump on a couple of issues that your honors have brought up. And the first is what was stated in this post Miranda interview in reviewing the record from the hearing. Law enforcement was questioned as to what they asked Mr. Brooks in the pre Miranda pre Miranda custodial interrogation. And importantly, missing from what they said was discussed was the issue of Mr. Brooks admitting to structuring cash payments. And so, because they say that that was, that was not discussed. We asked him what questions they asked what issues they went over. It's our understanding that that statement came from the post Miranda interview, and that information is contained in paragraph 22 of the affidavit in support of the search warrant. So, your honor, I think your honors, I believe that Mr. Brooks would be prejudiced by that information still coming in. I will move to paragraph 25, which was discussed by Miss Bryant. And I would submit that the information that Miss Bryant is giving the court about what would have happened would law enforcement still have pursued that avenue of investigation of going to the airport looking at incident reports. None of that information came out in the suppression hearing your honors. So there was nothing there's no, there are no facts out there. No testimony to show that they would have pursued that regardless of the unlawful detention. Your honors. Furthermore, as I point out in my briefs, we don't even know when they went to the airport to review those instant reports. Did they do it? Did someone do it right after Mr. Brooks was unlawfully detained? Did it happen a day later a week later? We don't know. And all of that information goes to whether that information is fruit of the poisonous tree dealing with the unlawful detention. Counsel, I think we understand the issues. Your time is up and we've got a long morning. And thank you. The case has been helpfully briefed and argued and we'll take it under advisement.